JOHN C. BROADNAX,

                Plaintiff,

   v.                                           Case No. 25-cv-944-pp

WARDEN ROBERT D. MILLER, *et al.*,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 10) AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 11)**

Plaintiff John C. Broadnax, who is incarcerated at Racine Correctional Institution and is representing himself, filed this case alleging violations of his constitutional rights. The court screened the complaint and determined that it did not state a claim. Dkt. No. 9 at 10. The court gave the plaintiff an opportunity to file an amended complaint; this order screens the amended complaint (Dkt. No. 10).

## I.    Screening the Amended Complaint

### A.    <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

1

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

2

stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

        B.      <u>Amended Complaint's Allegations</u>

The plaintiff alleges that on September 15, 2024, he was assigned to a cell with an incarcerated individual named Pablo Villafane. Dkt. No. 10 at 5, ¶1. The plaintiff states that several times before September 15, 2024, he informed defendants Unit Manager Nicolas Filkins and Unit Manager Jennifer Melgosa that Villafane was threatening him with physical violence and death. <u>Id.</u> at 5, ¶2. The plaintiff expressed fear for his personal safety from an imminent attack, and he asked to be removed from the cell he shared with Villafane. <u>Id.</u> Filkins and Melgosa allegedly responded that they do not move people, but they did not direct the plaintiff to a person who could move him. <u>Id.</u> at 5, ¶3.

The plaintiff alleges that on September 15, 2024, Villafane "was packing his belongings making a display of a pre-planned move." <u>Id.</u> at 5, ¶5. At about 7:30 p.m., "the defendant" allegedly walked into the room and started an argument with the plaintiff, calling him names and asking him to leave the cell. <u>Id.</u> The plaintiff states that he informed the officers on duty—presumably defendants Angel Antonio and Daniel Gonzalez—but they replied that the plaintiff and Villafane should work at solving their problems. <u>Id.</u> The plaintiff states that he would have received a conduct report if he had refused to lock back into his cell, so he returned to the cell. <u>Id.</u> at 5, ¶6.

3

The plaintiff alleges that at 9:15 p.m., he went to sleep on the upper bunk and about forty-five minutes later he woke up to Villafane beating his head with a trash can. Id. at 5, ¶7. After the plaintiff allegedly used his hands to block the trash can from hitting his head, Villafane redirected his blows toward the plaintiff's legs. Id. The plaintiff states that even though it was after 9:00 p.m. and his cell door should have been locked, he was able to open it and leave his cell between 10:00 and 10:20 p.m. Id. at 6, ¶8. He says that he wobbled out of his cell to the security station, leaving a trail of blood on the floor. Id. a 6, ¶9. The plaintiff states that he was met by defendants Sergeant Matthew Behrens, Officer Gonzalez, and Officer Antonio, who video-recorded his injuries and called 911. Id. The paramedics allegedly put the plaintiff on intravenous monitoring and rushed him to the hospital. Id.

While at the hospital, the plaintiff allegedly was treated for his injuries, which included receiving stitches for a head lesion and a leg injury. Id. at 6, ¶10. The plaintiff states that he returned from the hospital the night of September 15 to 16, 2024, but did not receive attention from the health services unit (HSU) until September 30, 2024. Id. at 10, ¶26. At that time, he says that his ankle, knee and leg were very swollen. Id. On October 1, he allegedly received antibiotics. Id. The plaintiff states that he believes that defendant Nurse Practitioner Randolph scheduled an appointment on October 24, 2024, which is a week after the plaintiff was re-admitted to the hospital on October 17 to receive treatment for his infected leg. Id. The plaintiff recounts that at the hospital he received intravenous treatment and electronic

4

monitoring of his vitals for three days. Id. He says that he was then released and sent back to the institution. Id. at 6, ¶10. The plaintiff states that despite his injuries, he was placed in a unit where segregated, incarcerated individuals are kept and was not afforded a single cell for the process of healing. Id. at 6, ¶12.

The plaintiff asserts that defendant Behrens acted with deliberate indifference by failing to take protective measures before and during the attack, despite having been informed of the threat to the plaintiff's safety. Id. at 7, ¶15. He also claims that Behrens acted with deliberate indifference by his failure to train defendants Antonio and Gonzalez. Id.

The plaintiff alleges that Antonio and Gonzalez acted with deliberate indifference because the security system allowed them to notice whether the plaintiff's door was unsecured or not. Id. at 7, ¶16.

The plaintiff asserts that defendants Sergeant Grau, Officer Reyes and Officer John Doe, although not working that night, exercised deliberate indifference by failing to take protective measures before the attack, even though they had been informed of the threat in the weeks leading up to it. Id. at 7, ¶17.

The plaintiff maintains that Filkins and Malgosa acted with deliberate indifference because they knew the risk involved in housing Villafane with the plaintiff, but they disregarded the risk to the plaintiff's safety. Id. at 8, ¶¶18-19. He also says that Filkins and Melgosa violated his rights by placing him—a

5

short, African American, openly bisexual man—in a cell with Villafane. Id. at 9, ¶23.

The plaintiff asserts that defendants Robert Miller, Kenya Mason, Patrick Schilgen and Brandon Morris acted with deliberate indifference based on their "failure to train, supervise and control obvious known officers and civilian personnel, who acquiesced the deprivation of rights to safety and health by their peers." Id. at 8, ¶20. The plaintiff also says that these defendants exercised deliberate indifference "by failing to install the existing wand-based handheld device for security checks and rounds so that the information regarding the frequency and efficiency of the monitored population be statistically evaluated for inmate classification and the necessary standard of care." Id. at 8, ¶21.

The plaintiff alleges that the municipal sheriff's department and/or the local sheriff from Sturtevant "failed to take reasonable precautions to register frequent checkings of safety, cell capacity design, and how likely the risk of inmate-on-inmate violence increases in the absence of the wand-based system information and privations related to minimal shared space over an extended period of time period." Id. at 9, ¶22.

The plaintiff contends that the HSU acted with deliberate indifference to his emergency because there were no staff nurses on duty at the time. Id. at 10-11, ¶28. He also says that the HSU exercised deliberate indifference by not supervising his condition from September 16 through October 1, which resulted in his injuries not healing. and by not treating his wounds when he

6

returned from the hospital. Id. at 11, ¶¶29, 30. The plaintiff states that Randolph acted with deliberate indifference because of her late intervention and follow-up for scheduling an appointment for the plaintiff's infection which caused him further pain, mental anguish and fear. Id. at 11, ¶32.

For relief, the plaintiff seeks nominal damages, compensatory damages, punitive damages and injunctive relief. Id. at 4.

C.      Analysis

The plaintiff names his former cellmate, Villafane, as a defendant. But Villafane is not a proper defendant. A plaintiff may bring a lawsuit under §1983 only against persons acting "under color of state law"—generally state or local government officials or employees. A plaintiff cannot sue another incarcerated individual under §1983 because the other incarcerated individual "is not clothed with the authority of state law and therefore does not act under color of state law." Lewis v. Guthrie, Case No. 23-cv-431, 2023 WL 5404449, at *2 (E.D. Wis. Aug. 22, 2023); see Stewart v. McBride, 68 F.3d 477, n.1 (7th Cir. 1995) (an incarcerated individual is not a state actor). The court will dismiss Villafane.

The plaintiff also names Racine's HSU as a defendant. The HSU is a department at Racine. It is not a "person" that may be sued under §1983. Myers v. Indiana Dep't of Corr., 655 F. App'x 500, 503 (7th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). The court will dismiss the HSU.

The Eighth Amendment to the United States Constitution requires prison officials to protect incarcerated persons from violence at the hands of other incarcerated persons. See Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). But not "every injury suffered by one prisoner at the hands of another [ ] translates into constitutional liability for prison officials." Id. at 834. The Eighth Amendment's prohibition against cruel and unusual punishment "obligates prison officials to take 'reasonable measures to guarantee the safety of … inmates.'" LaBrec v. Walker, 948 F.3d 836, 841 (7th Cir. 2020) (quoting Sinn v. Lemmon, 911 F.3d 412, 419 (7th Cir. 2018)). Prison officials who do not protect one incarcerated individual from violence at the hands of another may be found liable under the Eighth Amendment only if two requirements are met: (1) the incarcerated person must have been exposed to a risk of objectively serious harm, and (2) the prison official must have had actual knowledge of that risk and responded with deliberate indifference. See id.; see also Farmer, 511 U.S. at 837-38.

The plaintiff has alleged sufficient facts to allow him to proceed on a claim that he faced a risk of objectively serious harm. See, *e.g.*, Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005) (holding that "a beating suffered at the hands of a fellow detainee . . . clearly constitutes serious harm"). The plaintiff also has alleged that he told Filkins, Melgosa, Behrens, Antonio, and Gonzalez about Villafane's threats to his safety, but they did not do anything. He also alleges that Grau, Reyes, and Officer John Doe knew about Villafane's threats to his safety, but they did not do anything. At this stage, these allegations

satisfy the subjective prong of an Eighth Amendment failure to protect claim.
See LaBrec, 948 F.3d at 841; see also Gevas v. McLaughlin, 798 F.3d 475, 480-81 (7th Cir. 2015); Santiago v. Walls, 59 F.3d 749, 758-59 (7th Cir. 2010). The plaintiff may proceed on his Eighth Amendment claims against Filkins, Melgosa, Behrens, Antonio, Gonzalez, Grau, Reyes and Officer John Doe in their individual capacities.

The plaintiff alleges that Randolph delayed scheduling an appointment after his leg wound became infected, which caused him further pain, mental anguish and fear. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal, 851 F.3d at 720-21 (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Cesal, 851 F.3d at 721 (quoting Fenoglio, 792 F.3d at 776). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer, 511 U.S. at 836-38; Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute

9

deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an incarcerated individual's pain. <u>McGowan</u>, 612 F.3d at 640 (citing <u>Estelle</u>, 429 U.S. at 104-05). The plaintiff may proceed on an Eighth Amendment medical care claim against Randolph in Randolph's individual capacity.

The plaintiff alleges that Miller, Manson, Schilgen and Morris are liable in their official capacities for failing to train the personnel who violated his rights. But the plaintiff has not alleged that these defendants had any involvement in the events described in the complaint, so they are not liable in their individual capacities. <u>See</u> <u>Budz</u>, 398 F.3d at 918. But "[u]nder the longstanding doctrine of <u>Ex Parte Young</u>, a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law." <u>Id.</u> at 917-18 (quoting <u>Dean Foods Co. v. Brancel</u>, 187 F.3d 609, 613 (7th Cir. 1999) (citing <u>Ex Parte Young</u>, 209 U.S. 123, 159-60 (1908)). The plaintiff sues Miller, Manson, Schilgen and Morris in their official capacities and he seeks injunctive relief "to exposures to risk of violence[.]" Dkt. No. 10 at 4. The plaintiff may proceed on claims against Miller, Manson, Schilgen and Morris in their official capacities based on allegations that they failed to train the personnel who violated his rights.

The plaintiff alleges that Officer John Doe did not take precautions "to register frequent checkings of safety, cell capacity design, and how likely the risk of inmate-on-inmate violence increases in the absence of the wand-based system information and privations related to minimal shared space over an

extended period of time period." Dkt. No. 10 at 9, ¶22. Racine is a Wisconsin Department of Corrections institution, and it is not clear how the sheriff was involved in the prison's security practices. Nor is it clear how the security measures the plaintiff describes would have impacted his placement in a cell with Villafane. The plaintiff has not stated a claim against Officer John Doe, and the court will dismiss him.

Finally, the amended complaint does not contain any allegations against defendants Jacob Slawson, Russell Kamiski or Derrin Bayles. The court will dismiss them.

In summary, the plaintiff may proceed on Eighth Amendment failure-to-protect claims against Filkins, Melgosa, Behrens, Antonio, Gonzalez, Grau, Reyes and Doe in their individual capacities; an Eighth Amendment medical care claim against Randolph in Randolph's individual capacity; and a failure-to-train claim against Miller, Manson, Schilgen and Morris in their official capacities. After the named defendants answer the amended complaint and the court issues a scheduling order, the plaintiff will need to use discovery to identify the Doe defendant.

## II.     Motion to Appoint Counsel (Dkt. No. 11)

The plaintiff has filed a motion asking the court to appoint him counsel. Dkt. No. 11. He states that he is indigent and that he has tried to find a lawyer on his own. Id. The plaintiff states that the Clerk of Court has the contact information of the lawyers he contacted. Id.

11

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with the lawyers' names, their

addresses, how and when the plaintiff attempted to contact the lawyer and the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff states that he asked three lawyers to represent him and that the clerk's office has the lawyers' contact information. Dkt. No. 11. But to comply with the threshold requirement for appointment of counsel, the plaintiff must provide *to the court*—meaning, the judge—the contact information for the

13

lawyers he contacted. He also must provide the court—the judge—with an explanation of how and when he attempted to contact the lawyers, and the lawyers' responses. Even if the plaintiff had complied with this requirement, the court would not conclude at this early stage that he cannot litigate the case himself. His amended complaint thoroughly describes the events surrounding his claims. The plaintiff's filings show that he can communicate effectively with the court. His claims are not very complex. Based on these factors, the plaintiff appears capable of conducting discovery and responding to a motion for summary judgment. The court will deny without prejudice his motion to appoint counsel, which means that if later on the case becomes too complicated for the plaintiff to handle, he may renew his request for the court to appoint him a lawyer.

### III.    Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 11.

The court **ORDERS** that defendants Villafane, HSU, Slawson, Kamiski, Bayles and Officer John Doe are **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Filkins, Melgosa, Behrens, Antonio, Gonzalez, Grau, Reyes, Randolph, Miller, Mason, Schilgen and Morris. Under the informal

service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within sixty (60) days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 22nd day of May, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

16